UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED
SEP 29 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**Orlando-Christopher Anderson**

**Plaintiff,**

**v.** **Civil Case No. 05cv1852 (RJL)**

**Walter C. Wiggins, et al.**

**Defendants.**

**MEMORANDUM OPINION**
(September 29, 2006) [#5, 10, 13]

Plaintiff Orlando Christopher Anderson,[1] proceeding *pro se*, brings this action against the District Government Employees Federal Credit Union ("Credit Union"), Walter C. Wiggins,[2] Jennifer Moore,[3] Security Recovery, Inc. ("Security Recovery"), Linda G. Raines,[4]

[1] Plaintiff also refers to himself and/or his corporate identity throughout his Complaint as ": Orlando-Christopher: Anderson©," "Orlando Christopher Anderson (Corporation Sole)," and "Orlando Christopher Anderson, Authorized Representative."

[2] Defendant Wiggins appears from the record to be a Credit Union employee. (*See* Credit Union, Wiggins & Moore's Reply Mem. ("Credit Union Defs.' Reply") at 1-2.) The record, however, does not otherwise reveal Wiggins' position(s) within the Credit Union.

[3] Defendant Moore is a former Credit Union employee. Although plaintiff alleges that "in the events that occurred Moore was a key [c]haracter" (Pl.'s Mem. of P. & A. in Opp'n to Credit Union, Wiggins & Moore's Mot. Dismiss ("Pl.'s Opp'n to Credit Union Defs.' Mot. Dismiss") at 4), the record does not reveal Moore's former position(s) within the Credit Union.

The Credit Union, Wiggins, and Moore will be referred to collectively throughout this Memorandum Opinion as the "Credit Union defendants."

[4] Defendant Raines appears to be related to Security Recovery, although in a capacity that neither the Complaint nor the remainder of the record reflects. (*See generally* Compl.; Mem. of P. & A. in Support of Mot. of Defs. Security Recovery, Inc. & Linda Raines ("Security Recovery Defs.' Mot. Dismiss"); Pl.'s Mem. of P. & A. in Opp'n to Security Recovery Defs.' Mot. Dismiss ("Pl.'s Opp'n to Security Defs.' Mot. to Dismiss").)

Security Recovery, Inc. and Raines will be referred to collectively throughout this Memorandum Opinion as the "Security Recovery defendants."



and Lawrence H. Mirel[5] (collectively, "defendants") seeking over ten million dollars in damages[6] in response to the repossession of his automobile, a 2003 Toyota Corolla-S 4-door sedan, on July 18, 2005. (*See* Compl. at 2, 14[7]; Pl.'s Stmnt. of Facts (attached to Joint Meet & Confer Stmnt.) at 1; Credit Union Defs.' Stmnt. of Facts (attached to Joint Meet & Confer Stmnt.) at 1.) Now before the Court are three separate motions to dismiss on behalf of the Credit Union defendants, the Security Recovery defendants, and defendant Mirel, respectively. Upon consideration of the parties' submissions and the entire record herein, the defendants' motions are GRANTED because the Court lacks subject matter jurisdiction over plaintiff's claims.

**BACKGROUND**

As best the Court can deduce,[8] the essential facts of the present action are as follows: According to the Credit Union defendants, on August 21, 2002, plaintiff entered into a two-

---

5 Defendant Mirel is the former Commissioner of the District of Columbia's Department of Insurance and Securities and Regulation. (Mem. of P. & A. in Support of Mot. Dismiss Compl. Against Mirel ("Def. Mirel's Mot. Dismiss") at 1.)

6 According to a table provided by plaintiff containing an "Accounting of Damages Sustained," this total is comprised of $46,665.48 for the repossession of the automobile; $77,000.00 for "[r]acketeering civil penalties;" $1,050,000.00 for fraud, extortion, grand theft, conspiracy, and criminal racketeering; and $9,250,000.00 for the thirty seven constitutional violations listed in Count Two. (Compl. at 21.)

7 Because the Complaint does not contain numbered paragraphs, the pinpoint citations provided correspond to page numbers.

8 The facts are somewhat difficult to discern from plaintiff's Complaint and subsequent motions. Accordingly, the Court is compelled to rely more heavily than it otherwise would at a motion to dismiss stage on the pleadings of the defendants in order to piece together the genesis of plaintiff's claims.

page Loan Agreement ("Loan Agreement") with the Credit Union to finance his purchase of a 2003 Toyota Corolla-S 4-door sedan ("automobile" or "vehicle"). (*See* Loan Agreement (attached to Credit Union Defs.' Reply Mem. as Ex. B at 1-2); *see also* Credit Union Defs.' Stmnt. of Facts at 1.) Plaintiff "granted the [Credit Union] a security interest in the vehicle upon signing the [Loan Agreement]." (Credit Union Defs.' Reply Mem. at 3.) That security interest was formalized in a one-page Security Agreement ("Security Agreement") signed between the parties. (*See* Security Agreement (attached to Credit Union Defs.' Reply Mem. as Ex. B at 3).)

The Security Agreement's standard form language, as well as the standard form language of the Loan Agreement, required plaintiff to insure the automobile. The Loan Agreement's terms under the heading "PROPERTY INSURANCE" provided that if plaintiff did not obtain sufficient insurance himself, the Credit Union would "obtain insurance to protect Our interest and add its costs to Your loan and You agree to pay for it (by such means as increasing Your payment or increasing Your loan term)."[9] (Loan Agreement at 2.) According to the Credit Union defendants, plaintiff signed an "Agreement to Provide Property Insurance" on that same day, August 21, 2002,[10] but upon a subsequent request for verification, "[p]laintiff never provided proof of insurance." (Credit Union Defs.' Stmnt. of

---

9 The Security Agreement's terms were nearly identical, stating: "If You do not get or keep this insurance, We may, at Our sole option, obtain insurance to protect Our interest and add its costs t the loan related to this Agreement." (Security Agreement.)

10 None of the parties produced this document as an exhibit to the Court. Additionally, none of plaintiff's pleadings or motions acknowledge his entering into any of the foregoing agreements with the Credit Union.

Facts at 1.) Consequently, and pursuant to the above-referenced terms, the Credit Union independently "obtained insurance on the vehicle and the cost was added to the balance of the plaintiff's outstanding automobile loan." (*Id.*)

Instead of extending the term of the loan, the Credit Union opted for plaintiff to pay for the insurance by adding the amount of the deductible to his periodic loan payments. (*See id.*; Loan Agreement at 2.) But "[w]hen plaintiff would not increase his bi-weekly payments to reflect the increased payments, he defaulted on his loan." (Credit Union Defs.' Stmnt. of Facts at 1; *see also* Credit Union Defs.' Reply Mem. at 3 ("[D]ebtor failed to make proper payments on the vehicle.").) In response to plaintiff's default, and pursuant to the terms of the Loan Agreement and the accompanying Security Agreement,[11] "[t]he Credit Union repossessed the vehicle in question." (Credit Union Defs.' Reply Mem. at 3; *accord* Credit Union Defs.' Stmnt. of Facts at 1 ("The Credit Union gave notice of the default and repossessed the vehicle.").)

The repossession allegedly occurred on July 18, 2005. (*See e.g.*, Compl. at 14; Pl.'s Stmnt. of Facts at 1.) Plaintiff claims that upon inquiry he "was told by Jennifer Moore that the [automobile was] stored in Security Recovery, Inc.[,] Baltimore, Maryland." (Pl.'s

---

[11] Both Agreements state in relevant part, under the heading "DEFAULT":

> Upon any occurrence of default, . . . the Credit Union may enter the premises where the Collateral is located and take possession of it and the Credit Union may assert the defense of a superior right of possession as the holder of a security interest to any offense of alleged wrongful taking and conversion.

(Loan Agreement at 2; Security Agreement.)

Stmnt. of Facts at 1; *see also* Pl.'s Mem. in Opp'n to Security Recovery Defs.' Mot. to Dismiss at 2.) Shortly thereafter, plaintiff put a stop on his "Automatic Payroll Deductions" to the Credit Union.[12] (Pl.'s Stmnt. of Facts at 2; Pl.'s Mem. in Opp'n to Security Recovery Defs.' Mot. to Dismiss at 6.)

The genesis of : Orlando-Christopher: Anderson©'s security interest came on November 7, 2002, when "Orlando Christopher Anderson (Corporation Sole)" filed a UCC Financing Statement with the State of Maryland securing an interest in the automobile.[13] (*See* Compl. Ex. A at 1; Credit Union Defs.' Reply Mem. Ex. A at 1.) This security interest, however, appears to violate the terms of both the Loan Agreement and Security Agreement that plaintiff entered into with the Credit Union on August 21, 2002. (*See* Credit Union Defs.' Reply Mem. Ex. B. at 2, 3.) Both of those agreements state, under the heading "COLLATERAL": "Without the express written consent of the Credit Union, no other liens, security interests or encumbrances will be allowed to attach to the Collateral."[14] (*Id.*) The

---

[12] Complicating this otherwise routine repossession dispute is plaintiff's claim that he is both a person—Orlando Christopher Anderson—and a corporate entity—: Orlando-Christopher: Anderson©. Although plaintiff avers that "[t]he [p]laintiff is not trying to sue as a [c]ompany or as a [u]nion" (Pl.'s Mem. in Opp'n to Credit Union Defs.' Mot. at 5), :Orlando-Christopher: Anderson© in fact filed this Complaint. (*See, e.g.*, Compl. at Caption.) Furthermore, : Orlando-Christopher: Anderson© is the party suing the defendants on the grounds that it *also* has a security interest in the automobile. (*See* Compl. at 22; Pl.'s Mem. in Opp'n to Security Recovery Defs.' Mot. at 2.)

[13] On the document, both "Orlando Christopher Anderson" and "Orlando Christopher Anderson (Corporation Sole)" have the same address in South West, Washington, D.C. (*See* Compl. Ex. A at 1; Credit Union Defs.' Reply Mem. Ex. A at 1.)

[14] The borrower's signature on both agreements contains what appear to be two colons on either side of "Orlando-Christopher," indicating that it may have been Plaintiff's corporate entity, : Orlando-Christopher: Anderson©, and not his personal self, that entered into the agreements. (*See*

record does not reflect whether the Credit Union ever provided plaintiff with express written consent to attach another security interest to the automobile. The Credit Union defendants, however, do aver that "[t]he Credit Union properly repossessed the vehicle" (Credit Union Defs.' Stmnt. of Facts at 1), lending to the inference that such consent was not given.

On September 19, 2005, plaintiff filed a three-count *pro se* Complaint. In his first count, ("Count One") plaintiff seeks relief under Title 18 of the United States Code, Sections 1001 (styled as "FALSE DOCUMENTS"), 241 (styled as "CONSPIRACY"), 1961 (styled as "RACKETEERING"), and 1962 (not styled by plaintiff), for Security Recovery's alleged taking and giving of plaintiff's property to the Credit Union defendants. (*See* Compl. at 10-11, 14; Credit Union Def.'s Mem. at 2.) Plaintiff's second count ("Count Two") claims that Security Recovery and the Credit Union defendants violated thirty-seven of his constitutional rights, all of which constitute "actions of high crimes and misdemeanors in a single count of conspiracy" and allegedly are subject to penalty under Section 3571 of Title 18 of the United States Code (styled as "RIGHTS OF THE SOVEREIGN DENIED OR VIOLATED"). (Compl. at 14-19.) Finally, plaintiff's third count ("Count Three") is a continuation of Count One in which plaintiff alleges that the Credit Union defendants "fully and willfully ignored proper notices . . . of a crime taking place" in violation of Section 1964 of Title 18 of the United States Code (styled as "RACKETEERING (Civil)"). (Compl. at 19, 21.) Counts One

---

Loan Agreement at 1; Security Agreement.)

and Three also cite various violations of the District of Columbia Official Code allegedly committed by the defendants. (*See* Compl. at 14, 19.)

Plaintiff seeks both injunctive relief and damages. Plaintiff's equitable requests include: (1) an order requiring defendants to return the automobile to plaintiff; (2) an order requiring Mirel[15] to "locate the Replevin Bond and all Bonds underwritten for" the automobile; (3) an order that the Credit Union defendants correct plaintiff's account; (4) an order requiring production of certain banking and federal tax documents related to plaintiff's account; and (5) an order that defendants file a "Notice of Lis Pendens for public record for" the automobile. (Compl. at 22-23.) Plaintiff's request for damages against all defendants totals $10,423,665.48 "for their wrongdoings and inconvenience to the plaintiff/creditor."[16] (Compl. at 22.)

**ANALYSIS**

Now before the Court are three motions to dismiss on behalf of (1) the Credit Union defendants, (2) the Security Recovery defendants, and (3) defendant Mirel. The Credit Union defendants move to dismiss plaintiff's Complaint based on (i) insufficient service of process with regard to defendant Moore, (ii) lack of standing, and (iii) lack of subject matter

---

15 Mirel is not named in any of plaintiff's three counts. (*See* Compl. at 14-19.) Mirel's name appears only twice in the body of the Complaint: first in an introduction explaining that plaintiff "exercises his unalienable Sovereign Right against" the six defendants (Compl. at 5), and last in plaintiff's "Request for Remedy and Relief Required by Law" (Compl. at 22).

Similarly, Raines' name appears only once in the body of the Complaint, in the same introductory paragraph as mentioned above. (*See* Compl. at 5.) Raines, like Mirel, is not named in any of the plaintiff's three counts. (*See* Compl. at 14-19.)

16 *See supra* note 6.

jurisdiction. The Security Recovery defendants' move to dismiss, arguing that (i) this Court lacks subject matter jurisdiction over plaintiff's claims and (ii) plaintiff has failed to state a claim upon which relief can be granted. And finally, defendant Mirel bases his motion on (i) ineffective service of process and (ii) failure to state a claim upon which relief can be granted. Because the Court finds that it lacks subject matter jurisdiction over plaintiff's claims, his Complaint will be dismissed in its entirety, and the Court will not address defendants' remaining grounds for dismissal.

## I. *Standard of Review*

Federal district courts are courts of limited jurisdiction and "possess only that power conferred by [the] Constitution and [by] statute." *Logan v. Dep't of Veterans Affairs*, 357 F. Supp. 2d 149, 152 (D.D.C. 2004) (Leon, J.) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). "There is a presumption against federal court jurisdiction and the burden is on the party asserting the jurisdiction, the plaintiff in this case, to establish that the Court has subject matter jurisdiction over the action." *Id.* at 153 (citing *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 182-83 (1936)).

"[I]t is the duty of this and every court to raise jurisdiction at any time it may appear to be in doubt, *sua sponte* if necessary." *Doe v. United States Dep't of Justice*, 753 F.2d 1092, 1121 n.4 (D.C. Cir. 1985). If a defendant presents a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), the Court in deciding the motion "must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the

plaintiffs." *Logan*, 357 F. Supp. 2d at 153 (quoting *Fitts v. Fed. Nat'l Mortgage Ass'n*, 44 F. Supp. 2d 317, 321 (D.D.C. 1999)). When the inquiry focuses on the Court's power to hear the claim, however, "the Court may give the plaintiff's factual allegations closer scrutiny and may consider materials outside the pleadings."[17] *Id.* (citing Fed. R. Civ. P. 12(b)(1); *Herbert v. Nat'l Academy of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992); *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001)).

## II. *Lack of Subject Matter Jurisdiction*

"The basic statutory grants of federal-court subject-matter jurisdiction are contained in 28 U.S.C. §§ 1331 and 1332." *Arbaugh v. Y & H Corp.*, 126 S. Ct. 1235, 1244 (2006). "Section 1331 provides for federal-question jurisdiction, § 1332 for diversity of citizenship jurisdiction." *Id.*

A plaintiff properly invokes § 1332 jurisdiction when he presents a claim between parties of diverse citizenship that exceeds the required jurisdictional amount, currently $75,000. *Id.* (citing § 1332(a)). The instant case clearly lacks diversity, as more than one of the defendants is alleged to reside in the same city as the plaintiff. (*See* Compl. at Caption; Security Recovery Defs.' Mem. at 8.) The Supreme Court has provided that "[i]n the absence of diversity of citizenship, it is essential to jurisdiction that a substantial federal

[17] The Court is also mindful of its duty to "read a *pro se* litigant's allegations liberally." *Logan*, 357 F. Supp. 2d at 153. "It is well accepted in this Circuit that pleadings of *pro se* litigants are held to 'less stringent standards' than those filed by litigants with counsel and must be construed liberally." *Id.* (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Even *pro se* litigants, however, "must still allege a cause of action that falls within the subject matter jurisdiction of this Court." *Id.*

question should be presented." *Hagans v. Lavine*, 415 U.S. 528, 536 (1974) (quoting *Ex parte Poresky*, 290 U.S. 30, 31-32 (1933)). Thus, if plaintiff cannot present a substantial federal question, this Court lacks subject matter jurisdiction over his claim.

"A plaintiff properly invokes § 1331 jurisdiction when [he] pleads a colorable claim 'arising under' the Constitution or laws of the United States." *Arbaugh*, 126 S. Ct. at 1244 (citing *Bell v. Hood*, 327 U.S. 678, 681-85 (1946)). A claim invoking federal-question jurisdiction, however, "may be dismissed for want of subject-matter jurisdiction if it is not colorable, *i.e.*, if it is 'immaterial and made solely for the purpose of obtaining jurisdiction' or is 'wholly insubstantial and frivolous.'" *Id.* at 1244 n.10 (quoting *Bell*, 327 U.S. at 682-83). Furthermore, the Supreme Court has been clear that:

> Dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is "so insubstantial, implausible, foreclosed by prior decisions of [the Supreme] Court, or otherwise completely devoid of merit as not to involve a federal controversy."

*Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89 (1998) (quoting *Oneida Indian Nation of N.Y. v. County of Oneida*, 414 U.S. 661, 666 (1974)). Despite applying the liberal construction that is afforded to *pro se* litigants, this Court finds plaintiff's claim to be of the non-colorable variety described above.

Plaintiff's admonition to the Constitution and federal statutory law is, in a word, misguided. First, "[t]he federal constitution does not protect against injuries by purely private individuals -- that is, individuals who cannot be considered as acting for state or local government." *Howard v. Wal-Mart*, No. 05cv11759, 2006 WL 637855, at *2 (11th Cir.

March 15, 2006); *see also Canadian Transport Co. v. United States*, 663 F.2d 1081, 1093 (D.C. Cir. 1980) ("[P]rivate citizens, acting in their private capacities, cannot be guilty of violating due process rights."). A federal credit union – although perhaps misleading in use of the word "federal" – is not a government agency, but rather is a private corporation or association. *See Briggs v. State Dep't Fed. Credit Union*, No.05cv1344, 2006 WL 1444009, at *5 (D.D.C. May 25, 2006). Similarly, Security Recovery, Inc. appears by all accounts to be a private business. It goes without question that the employees of these private entities are also not government actors. Thus, the thirty-seven constitutional violations alleged by plaintiff in Count Two cannot apply toward either the Credit Union defendants or the Security Recovery defendants.[18]

Additionally, the statute cited in Count Two, 18 U.S.C. § 3571, is a criminal statute regarding fines for criminal offenses and does not provide for a private cause of action. 18 U.S.C. § 3571; *Massey v. Bank of Edmondson County*, No. 02cv5358, 2002 WL 31475012, at * 2 (6th Cir. Oct. 31, 2002). Private causes of action are also precluded for the criminal statutes located at 18 U.S.C. §§ 1001 and 241, the breach of which plaintiff alleges in Count One. *See* 18 U.S.C. § 1001; *Shaw v. Neece*, 727 F.2d 947, 949 (10th Cir. 1984) (§ 241); *Johl v. Johl*, 556 F. Supp. 5, 7 (D. Conn. 1981) (§ 1001); *Lewis v. Green*, 629 F. Supp. 546, 554 (D.D.C. 1986) (§ 241). These statutes, therefore, cannot be used to grant plaintiff access to

[18] Mirel, the only government defendant and thus the only defendant who can be liable for constitutional violations, was not named in Count Two, nor in Count One or Three for that matter.

this, or any other, federal court.

Finally, the three remaining statutes named in Counts One and Three, 18 U.S.C. §§ 1961, 1962 and 1964, cannot be satisfied, on their face, by the facts as alleged by plaintiff. The three statutes are part of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq*., with § 1961 defining the conduct that falls within the scope of RICO, § 1962 describing the various RICO violations, and § 1964 both setting forth a private cause of action and providing for treble damages. *Berg v. First Am. Bankshares, Inc.*, 599 F. Supp. 500, 502-03 (D.D.C. 1984). The plain words of the statute require a "pattern of racketeering activity" which "requires *at least two* acts of racketeering activity." *Id.* at 504 (quoting 18 U.S.C. § 1961(5)) (emphasis added). Without commenting on the nature of defendants' conduct, it is clear to the Court that plaintiff alleges only one act to have caused him harm: the repossession of plaintiff's automobile. One act does not a pattern make, and therefore is not enough to satisfy the clearly stated requirements of RICO.

"Not every question of federal law emerging in a suit is proof that a federal law is the basis of that suit." *Gully v. First Nat'l Bank in Meridian*, 299 U.S. 109, 115 (1936). Accordingly, "[a] suit to enforce a right which takes its origin in the laws of the United States is not necessarily, or for that reason alone, one arising under those laws, for a suit does not so arise unless it *really and substantially* involves a dispute or controversy respecting the validity, construction or effect of such a law, upon the determination of which the result depends." *Id.* at 114 (quoting *Shulthis v. McDougal*, 225 U.S. 561, 569 (1912)) (emphasis

added). Although plaintiff cites the Constitution and federal statutory law as the basis for his three counts, his claim is clearly not one "arising under" the Constitution and federal law. Consequently, this Court lacks subject matter jurisdiction over the claim. Because this Court also chooses not to exercise pendent jurisdiction over the various state claims cited by plaintiff, plaintiff's claims must be dismissed. *See* 28 U.S.C. § 1367(c).

**CONCLUSION**

For the foregoing reasons, the Court GRANTS defendants' Motion to Dismiss. An appropriate Order will issue with this Memorandum Opinion.

RICHARD J. LEON
United States District Judge